UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NICHOLAS LENNEAR,

        Petitioner,

v.                                          Civil Action No. 2:17-cv-135

ERIC D. WILSON,

        Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Nicholas Lennear's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1, and the Respondent, Eric D. Wilson, Warden, FCI Petersburg, Medium's ("the Respondent") Rule 5 Answer to Petition for Writ of Habeas Corpus ("the Answer"), ECF No. 5. The matter was referred for disposition to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that the relief sought in Respondent's Answer, namely denial of the Petition ECF No. 5, be **GRANTED**, and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On October 17, 2012, in the United States District Court for the Middle District of Florida, Petitioner was sentenced to one hundred and twenty (120) months of incarceration for his convictions of (1) Conspiracy with Intent to Distribute More Than Five Hundred (500) Grams of Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1). 841(b)(1)(B)(ii), and 21 U.S.C. § 46, and (2) Aiding and Abetting in the Possession with Intent to Distribute More Than Five Hundred (500) Grams of Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii), and 18 U.S.C. § 2. *See* ECF No. 5 at 2 (citing ECF No. 5, attach. 1 at 2, ¶ 4). Based on the Bureau of Prisons ("BOP") records, Petitioner is scheduled to be released on or about January 20, 2021, assuming his entitlement to good time credit. ECF No. 5, attach. 1 at 2, ¶ 4.

Although Petitioner is now incarcerated in FCI Petersburg, Petitioner was previously incarcerated at FCC Coleman, which is located in Florida. ECF No. 5 at 2. On June 11, 2016, at approximately 10:00 AM, Petitioner was involved in an incident with a FCC Coleman case manager ("Ms. Lemos"). According to Ms. Lemos, during morning count, all inmates were directed to remain in their respective cubicle until the count was finished. Petitioner attempted to leave his cubicle and Ms. Lemos directed Petitioner to return to his cubicle. Petitioner apparently disobeyed Ms. Lemos' direct order and continued to approach Ms. Lemos while loudly shouting "You have an issue with me because of Nowicki [another inmate official] and I'm tired of this sh*t." ECF No. 5 at 2. Ms. Lemos gave a second direct order for Petitioner to return to his cubicle, which Petitioner followed, but upon his return thereto, Petitioner began on a profanity-laced tirade directed at the other inmates protesting the allegedly unfair treatment of

2

the inmates by the correctional staff. Apparently encouraged by Petitioner's entreaties, other inmates joined in the disturbance and also began yelling at Ms. Lemos. Ms. Lemos notified the Operations Lieutenant and requested assistance from other correctional staff. Responding correctional officers removed Petitioner and another inmate from the area and Ms. Lemos was able to restore calm to the unit. According to Petitioner, he merely asked Ms. Lemos several times to use the restroom after the count was complete, but Ms. Lemos denied Petitioner's requests citing Petitioner's "bad attitude." ECF No. 5 at 3. *See also* ECF No. 5, attach. 1 at 7-8. Immediately after these events transpired, Ms. Lemos generated Incident Report #2860891 ("the Incident Report") to document the confrontation with Petitioner. Therein, Petitioner was charged with "Conduct Disruptive to the Security of the Institution (High) (Disciplinary Code 299), Most Like Engaging or Encouraging a Group Demonstration (Disciplinary Code 212).

Petitioner contested Ms. Lemos' version of events, insisting that Ms. Lemos' account as memorialized by the Incident Report was inaccurate, as he was merely an aging man in failing health with a medical condition that required his urgent and immediate need to use the restroom, which Ms. Lemos continued to deny based on her dislike of Petitioner and her frustration that the inmate count was taking longer than expected, as evidenced by the fact that she allowed other inmates to use the bathroom, yet Petitioner had asked to go before these other inmates. ECF No. 5, attach. 1 at 16. Petitioner also disputed that he was removed from the unit from correctional staff; rather, Petitioner was directed to walk, unescorted, to a different area. ECF No. 1 at 16. Later that day, at approximately 4:50 PM, Petitioner was provided with a copy of the Incident Report. ECF No. 5, attach. 1 at 7.

On June 13, 2016, Lieutenant A. Brinson ("Lt. Brinson") conducted an investigation, and discussed the allegation contained in the Incident Report with Petitioner, at which time Petitioner stated "[a]fter Count I asked her to go to the restroom and she said no. I asked her later after count and she still said no. I asked why I could not go to the bathroom and she said because you always have a bad attitude, but she let other people go." ECF No. 5, attach. 1 at 8. Lt. Brinson also noted that Petitioner disavowed the availability of witnesses to support his account, and that Petitioner displayed a "fair" attitude during the investigation. ECF No. 5, attach. 1 at 8. Ultimately, Lt. Brinson found the allegations in the Incident Report as recounted by Ms. Lemos to be substantiated. ECF No. 5, attach. 1 at 8.

When the Unit Discipline Committee ("UDC") attempted to discuss the matter with Petitioner, he "declined to comment to the UDC." ECF No. 5, attach. 1 at 7. Based on the seriousness of the charged conduct, the matter was forwarded to a Discipline Hearing Officer ("DHO") for a hearing. The UDC also recommended that the DHO take action against Petitioner to include the loss of Petitioner's good time credit. ECF No. 5, attach. 1 at 7.

On June 23, 2016, Petitioner had a Discipline Hearing conducted by a DHO, wherein Petitioner denied the charges, and stated "I asked her to go to the bathroom. She let three people go and not me. I did say you have an issue with me because of Nowicki." ECF No. 1 at 12. Petitioner was given notice of his rights before the DHO on June 13, 2016, however, Petitioner did not request the presence of witnesses to testify on his behalf, nor did he request the services of a correctional staff representative to assist Petitioner with the hearing, despite being advised of his right to both. ECF No. 1 at 12-13.

4

In the DHO's written decision dated June 30, 2016, the DHO found that Petitioner committed a Code 299, most like Code 212 (conduct which disrupts the orderly running of the institution, most like engaging in a group demonstration). ECF No. 1 at 13. After considering Ms. Lemos' written account of the event as documented in the Incident Report and the statements of Petitioner, the DHO concluded that Petitioner's conduct amounted to challenging the authority of staff in the housing unit, which was disrespectful and represented a security concern because such conduct interfered with staff's ability to control a sensitive area. ECF No. 5, attach. 1 at 12-14. Additionally, the DHO concluded Ms. Lemos was a trained professional possessed of the ability to differentiate between when an inmate "is simply addressing a staff member in a professional manner and an inmate being belligerent, intentionally challenging staff in a loud manner[, and] swearing at staff in the presence of other inmates" which was "far beyond what a reasonable thinking person would consider modest" given Petitioner's persistence and the fact that another inmate joined in the fracas. ECF No. 5, attach. 1 at 14. Accordingly, the DHO found the severity of the offense to be "High" and imposed the following sanctions: loss of twenty-seven (27) days of good conduct time; thirty (30) days of disciplinary segregation; loss of one hundred and twenty (120) days of both commissary and visiting privileges; and thirty (30) days of Petitioner's personal property impounded. ECF No. 5, attach. 1 at 14.

Petitioner appealed the DHO's decision and sanction to the Regional Administrative Office on July 2, 2016, requesting expungement of the Incident Report. ECF No. 1 at 15-16. On July 28, 2016, the Regional Director issued a written denial of Petitioner's appeal, noting that although Petitioner requested the cameras be reviewed as part of the administrative remedy, Petitioner did not make such a request in the presentation of his defense at the DHO hearing, and

concluding that the greater weight of the evidence supported the DHO's decision. ECF No. 1 at 17. He specifically advised Petitioner of his right to appeal the decision within thirty (30) calendar days of July 28, 2016. *Id.*

On November 17, 2016, Petitioner appealed the decision of the Regional Administrative Office to the BOP General Counsel, reiterating his previous grievance, with the additional ground that his "5th amendment due process rights and policy 5270.09 were violated when [Petitioner] requested to have the camera looked at to verify [Petitioner's] version of the events that took place that day" but was told that cameras are only reviewed when an occurrence involves a knife.[1]  ECF No. 1 at 18.  Petitioner further averred that his conduct as reported by Ms. Lemos was a violation of Code 307 and 312, as opposed to Code 299 most like Code 212. ECF No. 1 at 18.  As of the date of the instant Petition, Petitioner had not yet received a response to his last appeal, and therefore it is properly deemed to be denied.  See ECF No. 5 at 6 (citing ECF No. 1 at 9; 28 C.F.R. § 542.18 ("If an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.")).

On March 6, 2017, while incarcerated in Petersburg, Virginia, Petitioner filed the instant *pro se* Petition pursuant to Section 2241.  ECF No. 1.  Therein, Petitioner asserts two separate, but interrelated grounds for habeas relief arising out of the disciplinary proceedings that occurred after the June 11, 2016 incident at FCC Coleman: (1) that Petitioner's due process rights were violated as established by *Wolff v. McDonnell*, 418 U.S. 539 (1974) because staff refused to review video evidence that allegedly supported Petitioner's version of events at the DHO

---

[1] As the Respondent notes, "[a]lthough ostensibly untimely, the Central Office deems [Petitioner]s appeal timely because he was in transit to FCI Petersburg at the time of the Regional Director's decision and did not receive a copy until a later date." ECF No. 5 at 6 n.2.

hearing; and (2) that Petitioner's due process rights were violated as provided in *Superintendent v. Hill*, 472 U.S. 445 (1985) because the evidence clearly shows that Petitioner was not guilty of the conduct for which he was charged, but was guilty of a less serious infraction. ECF No. 1 at 2, 7, 9.

On July 17, 2017, the Respondent filed a Rule 5 Answer to Petitioner's Complaint seeking denial and dismissal of the Petition, and a *Roseboro* Notice. *See* ECF Nos. 5-6. On July 31, 2017, Petitioner filed a Response in Opposition to the Respondent's Rule 5Answer. ECF No. 7. The Respondent did not file a Reply to Petitioner's Response in Opposition and the time for doing so has expired. Accordingly, the Respondent's Rule 5 Answer (ECF No. 5) is ripe for recommended disposition.

## II.   DISCUSSION

**A. Petitioner has failed to demonstrate that he is in custody in violation of the Constitution or the laws of the United States because his due process rights were not violated under *Wolff* or *Hill*.**

Before evaluating the merits of Petitioner's Section 2241 request for habeas relief, this Court must ascertain whether it has jurisdiction over those claims. Because the Respondent does not dispute that Section 2241 is the proper vehicle for asserting this type of claim, the undersigned **FINDS** that this Court has jurisdiction to consider the instant § 2241 Petition and the merits thereof for reasons detailed herein.

1. <u>18 U.S.C. § 2241</u>

Section 2241 petitions (such as the instant Petition) "generally challenge[] the execution of a federal prisoner's sentence, including such matters as the administration of parole,

computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). The relevant portion of the statute provides that "(c) The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because the purpose of a Section 2241 petition for a writ of habeas corpus is "to test the legality of detention," a petition can be brought pursuant to 28 U.S.C. § 2241 "'regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him.'" *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995) (citing *Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982); quoting *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987)) (internal citations omitted). Here, because the instant § 2241 Petition challenges the way in which Petitioner's disciplinary proceeding was conducted, and the result thereof, it is properly before the Court.

2. Exhaustion

Unlike other statutes authorizing a prisoner to seek federal habeas relief, "§ 2241 is silent on exhaustion. Even so, courts have generally required parties to exhaust available administrative remedies before seeking § 2241 relief from the federal courts." *Janvier v. I.N.S.*, 174 F. Supp. 2d 430, 434 (E.D. Va. 2001). The undersigned **FINDS** that Petitioner dutifully appealed his claim through the BOP's prescribed administrative remedy scheme, and has therefore properly exhausted his remedies. *See* Part I, *supra*.

8

3. <u>Petitioner is not entitled to federal habeas relief</u>

Contrary to Petitioner's argument, his due process rights were not violated by the way in which his disciplinary proceedings were conducted, or by the specific result thereof, and therefore Petitioner is entitled to neither rescission of the Incident Report nor reinstatement of his twenty-seven (27) days of good conduct time.

*a. Petitioner's Disciplinary Hearing Complied with Wolff*

In asserting the claim of error based on the FCC Coleman staff's failure to review the video evidence of the events as urged by Petitioner, Petitioner relies on *Wolff v. McDonnell*, the seminal Supreme Court case which addressed the due process rights of prisoners and the requirements of prison disciplinary proceedings to avoid violations of such rights. 418 U.S. 539 (1974). In *Wolff,* the Supreme Court announced that disciplinary hearings of prison inmates must be structured in order to comport with the demands of the Due Process Clause of the Fourteenth Amendment. As the Fourth Circuit explained, "[t]he [*Wolff*] Court was clear that inmates retain rights under the Due Process Clause, but that their rights are 'subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.'" *Brown v. Braxton*, 373 F.3d 501, 504 (4th Cir. 2004) (quoting *Wolff,* 418 U.S. at 556). In fashioning black letter law to govern

> the balance between inmates' due process interests and prison authorities' penological needs, the *Wolff* Court drew some firm lines. On the one hand, inmates are entitled to advance written notice of the claimed violation, as well as a written statement concerning the evidence relied upon and the reasons for the disciplinary action taken. . . . On the other hand, inmates are not entitled to confront the witnesses against them, nor are they guaranteed the right to retained or appointed counsel.

9

*Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563, 567-70 (1974); *Baxter v. Palmigiano,* 425 U.S. 308, 315-22 (1976) (discussing limited range of inmate rights in prison disciplinary proceedings)) (internal citations omitted). When determining the specific procedural due process rights of an inmate facing a loss of good conduct time, the *Wolff* Court required the following three things: (1) the inmate should be provided with advanced written notice of the claimed violation; (2) the inmate should be allowed the opportunity "to call witnesses and present documentary evidence in his defense;" and (3) the factfinder of the evidence shall render a written decision which identifies the evidence relied upon and the reasons for the disciplinary action. ECF No. 5 at 7 (citing *Wolff,* 418 U.S. at 563, 566).

Here, Petitioner focuses on the second *Wolff* requirement in support of the claimed Due Process violation, by alleging that his requests to view the video recording of the June 11, 2016 events were denied, in violation of his right to present documentary evidence. However, the record indicates that the first time Petitioner ever made such a request was in his appeal of the DHO decision to the Regional Director on July 2, 2016. ECF No. 1 at 15. In fact, and as noted by the Respondent, the Regional Director's decision specifically mentions that Petitioner "did not request a review of the video footage when presenting [his] defense to the charges." ECF No. 1 at 17. Petitioner may not mount a challenge to the decision of correctional institution and the disciplinary proceedings thereof where the basis is unsubstantiated or otherwise unsupported by the record.

Moreover, in identifying the ability of inmates to present documentary evidence in their defense, the *Wolff* Court was not establishing an unfettered and inflexible right of prisoners to

present any and all possible documentary evidence in existence, rather, the ability to present witnesses and documentary evidence is just one aspect of a disciplinary proceeding that a reviewing court must consider to determine whether due process rights were afforded to an inmate facing disciplinary action. ECF No. 5 at 9-10 (citing *Arceneaux v. Pearson*, 449 F. App'x 396, 398 (5th Cir. 2011)). Additionally, because the factfinder's decision must be based upon "some evidence," viewing the videotape would not have changed the outcome, thus rendering Petitioner's submission of an affidavit purportedly attesting to his previous requests for the videotape prior to the DHO hearing inconsequential. *See* ECF No. 7, attach. 1.

Here, the factfinder based its decision on the investigation completed by Lt. Brinson, Petitioner's statements both to the investigator and to the DHO, Petitioner's failure to present inmate testimony to corroborate his version of events (despite being advised of his ability to do so), and the contemporaneous documentation of the altercation by Ms. Lemos in the Incident Report. Most significantly was Petitioner's statement that he "walked away" from Ms. Lemos which is a tacit admission that he ***did*** approach Ms. Lemos. *See* ECF No. 1 at 16. This clearly meets the standard of "some evidence" and therefore Petitioner is not entitled to habeas relief because his due process rights were not offended. *See e.g., Arceneaux v. Pearson*, 449 F. App'x 396, 398 (5th Cir. 2011) ("The fact that the DHO did not watch surveillance footage, assuming such footage existed, did not in itself render the hearing unfair"); *Wlash v. Berkebile*, 2011 WL 2417136 at *5 (S.D. W. Va. 2011) (viewing video would not have changed outcome); *Landry v. Adams*, No. 2:06CV151, 2007 WL 869224, at *4 (E.D. Va. Mar. 19, 2007), *report and recommendation adopted*, No. 2:06CV-151, 2007 WL 2416534 (E.D. Va. Aug. 17, 2007) ("[a]bsent any indication of the existence of exculpatory evidence, let alone prejudice resulting

11

from a failure to disclose it, the Court cannot find any violation of due process as a result of the unavailability of video surveillance footage").

   b. *The DHO Finding Satisfied Hill*

Petitioner's second ground for habeas relief relies upon the Supreme Court decision of *Superintendent v. Hill*, 472 U.S. 445 (1985). Specifically, Petitioner argues that the evidence did not support a finding of the serious infraction of code 299, most like code 212 (Conduct Disruptive to the Security of Institution (High), Most Like Engaging or Encouraging a Group Demonstration). Rather, Petitioner contends that his conduct amounted to the lesser charges of codes 307 (Refusing a Direct Order) and 312 (Insolence Towards a Staff Member). ECF No. 1 at 9.

In *Hill*, the Supreme Court set forth the standard by which reviewing courts must consider whether a disciplinary proceeding and resultant decision satisfies a prisoner's due process rights, which is "some evidence." *Thompson v. Hall*, 883 F.2d 70 (4th Cir. 1989) ("[F]indings of prison disciplinary boards meet the minimum requirement of due process if they are supported by 'some evidence' on the record.") (quoting *Superintendent v. Hill*, 472 U.S. at 454). As the Respondent notes, in support of this ground, Petitioner requests that the Court engage in a course of conduct that is expressly prohibited by *Hill* by assessing the credibility of the witnesses and reweighing the evidence to reach a different result. *See Hill*, 472 U.S. at 454-56.

Where a court finds, as it has done here, that the *Wolff* guidelines are satisfied, *see* Part II.A.3(a), *supra*, Supreme Court precedence requires this Court to afford the DHO's decision "'wide ranging deference' in pursuing legitimate penological concerns," *Thompson v. Hall*, 883

12

F.2d 70 (4th Cir. 1989) (citing *James v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 126 (1977)). The undersigned **FINDS** that the DHO's determination that Petitioner's conduct was properly classified as the more serious infraction meets the "some evidence" standard enunciated by the Supreme Court in *Hill*. 472 U.S. at 454. In fact, there is ample evidence that Petitioner engaged in Conduct Disruptive to the Security of the Institution (High), Most Like Engaging or Encouraging a Group Demonstration.

As noted in the undersigned's consideration of Petitioner's *Wolff*-based claim, Petitioner's contention that he "returned" to his cube and "walked away" from Ms. Lemos, taken with Petitioner's concession that he did make a statement to the effect of "You have a problem with me because of Nowicki" amounts to tacit admissions of the charged conduct and corroborates Ms. Lemos' account, and thus, the DHO's articulation of the underlying facts. *See* ECF No. 1 at 16. For example, this corroborates Ms. Lemos' account that all inmates were directed to remain in their cubicles during the count, and that Petitioner left his cubicle in violation of such directive. Integral to both the DHO finding and this Court's review thereof is the fact that although Petitioner claims that "any unbiased, reasonable observer" would have found that "there was ever an issue in the first place other than the fact that a 55 year old man in bad health needed desperately to use the restroom" and that Ms. Lemos showed deliberate indifference to his medical condition and attendant need to use the restroom, Petitioner did not call any witnesses to corroborate his version of the events, including other inmates or correctional staff who witnessed the event and were identified by Petitioner's administrative appeal efforts as having observed the events. *See* ECF No. 1 at 16. *See also* ECF No. 5 at 12 (citing *Blow v. Compagnie Mar. Belg (Lloyd Royal) S. A.*, 395 F.2d 74, 79 (4th Cir. 1968) ("It is

13

well settled that the unexplained failure of a party litigant to call a material witness to give evidence in his behalf supports an inference that such witness, if permitted to testify, would testify against the interests of the party failing to present this testimony.")). Furthermore, whether Petitioner reasonably viewed Ms. Lemos as exaggerating or imagining a dangerous or potentially dangerous situation is not the standard by which this Court reviews the disciplinary proceeding. Rather, the Court must give great deference to the judgments made in performance of prison officials' difficult job, and the inherent concerns for safety of both staff and inmates which are a constant presence in the "complex and difficult" environment of a correctional facility. *See Wolff*, 416 U.S. at 562 ("guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace."). *See also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators.").

To the extent that Petitioner attempts to discredit Ms. Lemos' account as a "gross exaggeration of what transpired" by stating that he was permitted to leave the unit unescorted, rather than being removed from the unit, this is a distinction without a difference for two reasons. ECF No. 1 at 16. First, removal, whether by force or direction, is still removal. Second, what transpired *after* the confrontation between Petitioner and Ms. Lemos ended and correctional officers responded to Ms. Lemos' request for assistance is of no moment because Petitioner's infraction was based purely on the aforementioned confrontation. Petitioner was not charged with refusing to leave the unit when directed to do so, nor was he charged with any sort of

resistance when directed to leave the unit such that his physically forced compulsion was required.

4. Conclusion

In summation, while Petitioner properly invoked Section 2241 as the vehicle to challenge the manner in which his federal sentence is being executed, as detailed herein, the undersigned **FINDS** that the substantive claims in the instant § 2241 Petition lack merit and the undersigned **RECOMMENDS** that the Relief sought by the Respondent's Rule 5 Answer (ECF No. 5) be **GRANTED**, and the Petition (ECF No. 1) be **DENIED AND DISMISSED WITH PREJUDICE.**

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the relief sought by the Respondent's Rule 5 Answer (ECF No. 5) be **GRANTED**, and the Petition (ECF No. 1) be **DENIED AND DISMISSED WITH PREJUDICE.**

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and counsel of record for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 6, 2018